NOT FOR PUBLICATION

FILED
SEP 12 2013
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

TJOF

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

In re                              Case No. 13-12551-A-11

Wide West Services, LLC,           DC No. HWL-3

        Debtor.
_____/

**MEMORANDUM DECISION**

Section 1112(b)(4)(A) of the Bankruptcy Code authorizes dismissal of a Chapter 11 bankruptcy where there is continuing loss to the estate and no reasonable likelihood of rehabilitation. The debtor in possession operates a 162-unit apartment complex. It has been consistently losing money before and after the bankruptcy. It has no demonstrated access to working capital and, other than hiring a property manager, no specific plan to become profitable. Should the court dismiss this case?

## HISTORY

The debtor in possession Wide West Services, LLC ("Wide West") is owned and operated by Vinod Kaura and Veena Kaura (the "Kauras"). It has two major assets: A 162-unit apartment complex in Bakersfield, California, known as Pacific Pines, and a claim against Wells Fargo Bank ("Wells Fargo"). The apartment complex has an estimated value of $7.2 million. It is encumbered by a first deed of trust in favor of Wells Fargo and a second deed of trust in favor of LSREF2 Chalk, LLC ("Chalk"). The aggregate amount due to these lenders exceeds $8.2 million. Wide West's claim against Wells Fargo is estimated at $14 million, but the claim appears to be unliquidated and contingent.

Wide West or its predecessor, the Kauras, have owned Pacific Pines since 2005. The Kauras were absentee owners, leaving daily management duties to onsite manager Gabriel Ramos and his daughter Faviola. Pacific Pines has also been consistently losing money since 2010, requiring infusions of cash from the Kauras. In the spring of 2012, the complex was collecting approximately $32,000 in monthly rent. However, expenses were running more than $82,000 per month, consisting of $59,000 in secured debt service; $15,000 in utilities, insurance, and maintenance; and $8,300 in property taxes.

In 2012, of the mind that the loan was in default, Wells Fargo instituted a judicial foreclosure against the property. *See Wells Fargo Bank, N.A. v. Kaura,* No. S-1500-CV-276872-NFT (Cal. Sup. Ct. Kern Cnty. 2012). The bank sought the appointment of a receiver to take control of Pacific Pines and collect the rents. The Kern County Superior Court agreed and entered an order appointing Josh M. Hodeda ("Hodeda") to act as receiver. That order also required that the Kauras turn over specified records to Hodeda.

When Hodeda took over in June 2012, the affairs of Pacific Pines were not in order. The complex had substantial deferred maintenance, boarded windows, 20 abandoned cars on site, enough debris to fill 14 40-yard dumpsters, squatters in some units, and groups of people who were neither tenants, nor their guests, regularly loitering in the parking lot. Similarly, management was lacking. Tenant security deposits were not placed in separate accounts. The roll of tenants was not fully supported by rental agreements. Many tenants were not paying rent or were paying it late. The average monthly rent collected for the entire 162-unit complex in the spring of 2012, was $32,461 per month, or just over $200 per unit per month.

As the receiver, Hodeda attempted to improve the condition of the property and increase profitability. Under his supervision, extensive cleanup efforts had been undertaken, squatters evicted, the property made more secure, new management installed, and tougher rent policies implemented. Revenues increased, but the complex was not yet profitable. As a result, Wells Fargo had to pay $100,000 for the property taxes and advanced Hodeda an additional $260,000 to cover the operating shortfall.

Perceiving that the Kauras had not fully complied with the Kern

County Superior Court's order to turn over records, Wells Fargo brought an order to show cause for contempt against the Kauras individually. Yet, immediately prior to the hearing on this contempt citation, the Kauras caused Wide West to file for Chapter 11 bankruptcy protection on April 11, 2013.

After the filing, Wide West stipulated that Hodeda would remain in place as the receiver of Pacific Pines. In the following months, he has increased rent revenues to $40,000 to $45,000 per month. Yet, even with these increased revenues and the prior financial assistance from Wells Fargo, Hodeda has been unable to service the secured debt throughout his time as the receiver, both before and after the petition date.

Wells Fargo and Chalk have now filed a motion to dismiss the case for cause under 11 U.S.C. § 1112(b). Among other grounds, the movants argue that cause exists based on the continuing loss to the estate and the absence of a reasonable likelihood of rehabilitation.

## DISCUSSION

### I. Cause Includes Continuing Loss to the Estate and the Absence of a Reasonable Likelihood of Rehabilitation

On request of a party in interest and after notice and a hearing, the court shall dismiss a Chapter 11 case or convert it to a Chapter 7 case, "whichever is in the best interests of creditors and the estate," for cause shown. 11 U.S.C. § 1112(b)(1). In deciding such motions, the court must engage in a two-step analysis. *See Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994). First, the court must ascertain whether cause exists. *Id.* Second, if the court finds that cause exists, it must decide whether dismissal or conversion better

serves the interests of creditors and the estate. *Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens)*, 552 F.3d 958, 960-61 (9th Cir. 2009); *Superior Siding & Window*, 14 F.3d at 242.

The moving party bears the burden of proving by a preponderance of the evidence that cause exists. *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013). Once the moving party has met its burden, it is incumbent on the debtor to show that relief is not warranted. *See In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).

Turning back to the first step of the § 1112(b) analysis, the court notes that cause includes the "continuing loss to . . . the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

A.  **Continuing Loss to the Estate**

The continuing loss element of § 1112(b)(4)(A) may be satisfied by showing a loss that will "materially negatively impact the bankruptcy estate and the interest of creditors" or "dwindling liquidity, or illiquidity resulting in unpaid postpetition debts which usually constitute administrative expenses that will take priority over prepetition claims." *Hassen Imports P'ship v. City of W. Covina (In re Hassen Imports P'ship)*, BAP No. CC-13-1042-KiPaD, 2013 WL 4428508, at *13 (B.A.P. 9th Cir. Aug. 19, 2013) (quoting 7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012)). "This element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief." *Id.* (quoting *In re Schriock Constr., Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994)). In evaluating the continuing loss prong, the court does not accept the

financial statements at face value but must "fully evaluate the present condition of a debtor's estate." *Id.* (citing *In re Motel Props., Inc.*, 314 BR. 889, 894 (Bankr. S.D. Ga. 2004)).

Since the order for relief, Pacific Pines has been cash flow negative. In the months following the bankruptcy filing, Hodeda has increased monthly revenues to $40,000 to $45,000. But postpetition expenses still exceed these increased revenues, and Hodeda has only been able to continue operations (1) by not servicing the secured debts held by Wells Fargo and Chalk, (2) by causing Wells Fargo to pay $100,000 in annual property taxes, and (3) by obtaining the $260,000 advance from Wells Fargo to pay operating expenses.

Wide West's redoubt is two-fold. First, excepting a short and strategic default, Veena Kaura contends that they never missed a payment to Wells Fargo or Chalk and, thus, she reasons, the property can be operated profitably. But this statement is undercut by her own testimony. Specifically, she admitted that Wide West was only able to satisfy its obligations prepetition due to large cash infusions that came in on a monthly basis. The property has been losing money since 2010. In spring of 2012, it was losing approximately $41,000 every month. In May 2012, the Kauras transferred $83,000 from their personal accounts to pay Wide West's obligations. And even then, Wide West had substantial deferred maintenance costs left unaddressed by the operating budget. Wild West has not introduced any evidence to show that the circumstances have changed after the bankruptcy filing that could show a profitable operation.

Alternatively, Wide West argues that the presence of the receiver imposes an unnecessary and sizeable administrative burden on Wide West, which interferes with its ability to become profitable. But

this argument lacks momentum.  The receiver was appointed only in June 2012, but Pacific Pines has not been profitable since 2010.  Thus, Pacific Pines's inability to become profitable cannot be directly attributable to the administrative burden of the receiver.  Moreover, the $2,648 monthly management fees actually charged by Hodeda are lower than those proposed by Wide West's expert, Allan Synder ("Synder"), who estimated monthly management fees should be between $3,000 and $6,000.  Lastly, though Wide West criticizes Hodeda for using companies in which he has an interest to provide vendor services to Pacific Pines, there has been no showing that the fees charged by Hodeda's companies are not actual or reasonable for the tasks performed.

As a result, the court finds a continuing loss to the estate.

**B.    Absence of Reasonable Likelihood of Rehabilitation**

For the second prong of § 1112(b)(4)(A), rehabilitation is a different and higher standard than reorganization, which is usually measured by the ability to confirm a plan.  *Hassen,* 2013 WL 4428508, at *14 (citing *In re Creekside Senior Apartments,* 489 B.R. at 61). The key inquiry is whether the debtor's business prospects justify continuance of the reorganization effort.  *Id.*

In this instance, they do not.  First, Wide West has no equity in the apartment complex.  Pacific Pines has a value of $7.2 million, while the secured debts against it total $8.2 million.

Second, Wide West has no other significant assets.  While Schedule B does reveal an unliquidated, contingent claim of $14 million against Wells Fargo, there was no evidence offered as to the viability of this claim or the amount of damages.  Thus, Wide West cannot reasonably rely on this potential source of capital to fund any

plan of reorganization, especially given the possible offsets by Wells Fargo.

Third, Wide West has not demonstrated access to working capital. Veena Kaura testified that she and her husband were personally willing to fund Wide West's capital and operational needs. However, her ability to do so is questionable. Synder, Wide West's expert on apartment complexes, testified that he, as the new property manager, would need an immediate $305,000 capital contribution to renovate apartment units and common areas. After such renovations, it would take an additional eight to nine months to reach the target of 93% occupancy. Until then, based on historical budgets, the complex would have a $40,000 monthly negative cash flow, requiring significant, additional infusions of cash by the Kauras. But neither Veena Kaura, nor any other witness, provided evidence as to the their ability to withstand these cash flow needs.

Fourth, Wide West's plan, suggested by its expert Synder, is not sufficiently concrete to justify further rehabilitation efforts. That plan involves employing Synder as a property manager to create a more profitable complex. But the court does not find Synder's testimony credible on this point. Synder's work in the last 20 years has been predominantly as an expert witness, rather than as an actual apartment manager, and he has no experience with apartment complexes in or around Bakersfield. Similarly, his plan lacks specificity, a fact which he admits. And even were these issues not present, his testimony does not address the primary problem in this case: Wide West's ability to pay off or refinance the secured debts to Wells Fargo and Chalk, its primary creditors.

For each of these reasons, the court finds the absence of a

reasonable likelihood of rehabilitation.  Because the two prongs of § 1112(b)(4)(A) have been established, cause exists in this case.

**II.   The Best Interests of Creditors and the Estate Favors Dismissal**

If the court finds that cause exists, it must then decide whether dismissal or conversion better serves the interests of creditors and the estate.  *Shulkin Hutton*, 552 F.3d at 960-61; *Superior Siding & Window*, 14 F.3d at 242.  The court finds dismissal is the more appropriate relief.

Here, there are at least two reasons why dismissal, rather than conversion, better serves creditors and the estate.  First, Hodeda is already operating Pacific Pines for the benefit of creditors and would continue to do so after dismissal.  Prior to his appointment, the Kauras managed the property but did not do so in a way that is consistent with the interests of creditors.  This is evident from a deteriorated condition of the property, poor management, and lacking recordkeeping.

Second, creditors do not need the protection of the Chapter 7 trustee.  The major asset, the complex, is already overencumbered by Wells Fargo and Chalk's liens.  Unsecured debts total about $78,000, which are primarily debts from Hodeda's operation of Pacific Pines and guaranteed by Wells Fargo in the state court's order appointing Hodeda as the receiver.  As a result, unsecured creditors have a more reliable source of repayment than the Chapter 7 estate.

For these reasons, the case will be dismissed.

//
//
//
//

CONCLUSION

Based on the foregoing, the motion will be granted, and the case dismissed. The court will issue a separate order consistent with the findings herein.

Dated: September 12, 2013

_____
Fredrick E. Clement
United States Bankruptcy Judge

# Instructions to Clerk of Court
## Service List

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked _X___, via the U.S. mail.

    Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and ____X_____ Other Persons Specified Below:


James L. Pagano, Esq.
96 N. Third Street, Suite 525
San Jose, CA 95112

Ian Kass, Esq.
96 N. Third Street, Suite 525
San Jose, CA 95112

Jesse Moore, Esq.
111 Congress Ave., #510
Austin, TX 78701

Gregory Hesse, Esq.
1445 Ross Ave., #3700
Dallas, TX 75202

Brian Harvey, Esq.
1000 Wilshire Blvd., #1500
Los Angeles, CA 90017-2457

Robin S. Tubesing, Esq.
Office of the United States Trustee
2500 Tulare St., #1401
Fresno, CA 93721